THE PEOPLE on the relation of HENDERSON *a.* SNEDEKER.

*Supreme Court, Dutchess Circuit; September,* 1856.

ACTION IN THE NATURE OF QUO WARRANTO.—RECOVERY OF
DAMAGES.

In an action in the nature of a *quo warranto,* brought against an alleged intruder
upon a public office, the judgment of the court, if for the plaintiff, can only be a
judgment of *ouster* and for costs.

If the plaintiff has a claim for damages against the defendant to recover the fees
collected by the latter, or otherwise, that claim must be asserted in a separate
action.

Trial by the court without a jury.

This action was brought in May, 1855, by the People on the
relation of Monroe Henderson, and Monroe Henderson, as
plaintiffs, against John S. Snedeker. The object of the action
was to test the right of defendant to exercise the office of
county clerk of the county of Queens. In June, 1855, the
cause was brought to trial at the Dutchess circuit before the
court without a jury, upon an agreed statement of facts stating
the following among others :—

January 1, 1855, Martin I. Johnson, then clerk of the
county of Queens, appointed the defendant to be deputy clerk
of that county; and the defendant continued to hold that po-
sition down to March 29, 1855, when Johnson died.

Shortly afterwards Henderson, who was a person eligible to
the office of county clerk in Queens county, received a com-
mission from the governor, appointing him to be county clerk
in place of Johnson.

Upon these facts the relator Henderson claimed that his ap-
pointment was valid under the act of 1849, (*ch.* 28, § 1) which
provides that " whenever vacancies exist, or shall occur in any
of the offices of this state *where no provision is now made by
law for filling the same,* the Governor shall appoint some
suitable person,"—&c.

The defendant relied upon the provision of the Revised
Statutes (1 *Rev. Stats.,* 376, § 59) that, " whenever the office of

any county clerk shall become vacant, his deputy shall perform all the duties and be subject to all the penalties appertaining to the office of clerk of the county, until a new clerk shall be elected or appointed for such county and duly sworn." He contended that this was such provision by law for the filling of the office as excepted the case from the general power of appointment conferred upon the Governor by the act of 1849.

Upon these facts the court rendered its decision in favor of the defendant; and the plaintiff appealed to the Court of Appeals.

The Court of Appeals held that in such case the Governor was entitled to fill the vacancy by appointment, and that the relator was entitled to the office.* They reversed the judgment and ordered a new trial.

---

* The grounds of the decision as stated in the opinion of Chief Justice Denio, were substantially as follows :

Prior to the adoption of the Constitution of 1846, the following was the mode provided by law for filling the vacancy occasioned by the death of a county clerk : If a county clerk died in office, his deputy was immediately authorized to perform all the duties of the situation, and if no appointment was made, the deputy continued the incumbent until the next general election. (1 *Rev. Stats.*, 376, § 59; *Laws of* 1830, *ch.* 320, § 4). But the Governor was required to make an appointment ; and after the appointment made by the Governor, the appointee held the office until the next general election. (1 *Rev. Stats.*, 124, § 49 ; *Laws of* 1830, *ch.* 58, § 2). In either case, the vacancy was to be filled at such election. (*Laws of* 1842, 111, § 8).

The provision in the Constitution of 1846, respecting the election to the office of clerk, is the same as in that of 1822. That officer is to be chosen once in three years, and as often as vacancies shall happen. (*Art.* 10, § 1). And all laws not repugnant to the constitution are continued in force. (*Art.* 1, § 17). Thus far no alteration was made. The same office, with the same provisions for designating the officer, and the same provision for a vacancy, are continued.

The act of 1849 (*Laws of* 1849, 26, *ch.* 28, § 1), does not affect the question. Its purpose is quite obvious. Certain new offices were established by the present constitution ; and a large class of officers who were appointed by the Governor and senate under the former system, were made elective by the people. As to these offices, there was no provision in the former statutes for filling vacancies. The object of the Revised Statutes upon this subject was confined to offices the appointment to which was vested in the Governor and senate or in the legislature, and to the office of sheriff and county clerk, and of register of the city and county of New York. (1 *Rev. Stats.*, 121, §§ 42, 43–49). Vacancies in certain cases were required to be filled at special elections. But the provision in this respect was limited to cases where an election had been prevented by a tie-vote, to cases where the right of the person to hold the office had ceased before the commencement of

The People *on rel.* Henderson *a.* Snedeker.

The cause now came before the court without a jury, for a second trial. The only question was what was the nature and extent of the relief to be granted to the plaintiff; whether he was entitled to recover damages for the fees received by the defendant, or whether he could only have judgment affirming his title, and for costs, and must bring another action for his fees.

*H. W. Johnson*, for plaintiff.—I. Although the term of office in contest has expired, if the relator is successful, the court must proceed and pronounce judgment and award costs. This was the rule under the Revised Statutes, and it is unchanged by the Code. (The People *v.* Loomis, 8 *Wend.*, 396 ; 2 *R. S.*, 583, § 37 ; 585, § 48, 2 *.ed.*; *Code*, § 436, 441).

II. The judgment of the court must be that the relator was entitled to the office and *to the fees and emoluments thereof*, from the tenth day of April, 1855, to the first of January, 1856, and that the defendant usurped and intruded into it, and received the fees and emoluments during that period.

III. The authority to pronounce such a judgment cannot be questioned. But must the judgment stop here, without any power on the part of the court to carry it into effect by awarding a return of the fees and emoluments to the relator ? Manifestly not, because, 1, By section 275 of the Code, the court is authorized to grant the plaintiff any relief consistent with the case made by the complaint and *embraced within the issue.* The receipt of fees by the defendant is one of the issues in this case. 2. The fees and emoluments are incident to the office.

---

his term of office ; to vacancies in the office of member of assembly, and to cases where a vacancy proper to be supplied at a general election had not been supplied at the next general election. (1 *Rev. Stats.*, 3 *ed.*, 730, §§ 6–9). As to a large number of offices named in the new constitution, there was therefore no provision respecting vacancies prior to 1849. The statute of that day was designed to supply that deficiency. Hence, it was limited in its terms to cases where no provision had been made by law for filling vacancies.

The case of a vacancy occasioned by a county clerk dying in office stands upon the same footing that it did before the adoption of the new constitution. The Governor had, therefore, power to appoint the relator, and his appointment terminated the right of the defendant to execute the duties of the office.

The right to hold the office necessarily draws with it the right to receive the fees. If the court can award a restitution of the one, why can it not of the other? 3. The court certainly possesses the power to award and enforce a restitution of the books and papers appertaining to the office. These are mere *incidents* to the office, and they might with just as much propriety be withheld by the defendant as the fees. 4. Upon an allegation that the defendant has received any of the fees and emoluments of the office, he may be arrested and held to bail under section 435 of the Code. The object of the order of arrest is to secure a compliance with the judgment of the court. The arrest is only authorized in case the defendant has received *fees*. It is manifest, therefore, that the judgment in relation to which a compliance is to be enforced by the arrest, is one in regard to the fees; otherwise this section is the sheerest nonsense, and authorizes the court to perpetrate a gross outrage upon the person of the defendant for no purpose whatever. 5. Section 439 of the Code does not apply to the relief asked for in this case. In awarding judgment for the fees of the office received by the defendant, the court do not award them as *damages* sustained by the relator, but as one of the *incidents* of the office. After he has recovered his fees in this proceeding, he may still sue for his *damages* under that section. 6. There is nothing in the Code that limits the power of the court to awarding only *partial* relief in the case.

IV. As the court clearly must pronounce judgment in favor of the relator's right to hold the office, and must declare him entitled to the fees, there must be power in the court to do whatever is necessary to give effect to the judgment. The right to receive the fees being determined, it only remains to ascertain the amount of them. For information upon this point, a reference is clearly authorized. (*Code*, § 271, *subd.* 2).

*John J. Armstrong*, for defendant.—I. All that the court is permitted to do in this action, is to determine the right of the relator to the office in question, and leave the matter of fees, or rather damages, to be settled in another proceeding. Sections 428, 336 and 441 of the Code, do not permit the court to

pass upon any other questions than that of the right of the parties to the office. The judgment thus required to be entered is similar to that provided under the Revised Statutes; and the *form* of the judgment thus entered should be the same (2 *Burrill's Pr.*, 187, 3 *Ib.*, 535).

II. This view is also much strengthened by a reference to the former practice. Then the judgment of *ouster* must have been docketed; and within a year afterwards the person adjudged to be entitled might file his suggestion that he had sustained damages to a certain amount. If the parties contested the matter, issue was joined and tried, and a judgment was entered and execution issued thereon, as in personal actions. (2 *Burrill's Pr.*, 188). And these proceedings were taken by the person entitled to the office and in his name only. Thus in effect there were *two distinct actions*.

III. Section 439 of the Code, however, settles the question by providing that if judgment be rendered in favor of the person alleged to be entitled, "he may recover *by action* the damages which he shall have sustained," &c.

IV. Damages could not be recovered in this action, because there is not in the complaint any averment of damages sustained, nor is there any issue joined which involves that point,—and because there is joined with the relator a co-plaintiff, the People, having no interest in that matter.

V. It is said that an order of reference may be resorted to to ascertain the damages, under section 270 of the Code, subdivision 2,—which allows a reference when required for the information of the court before judgment, or for carrying the judgment into effect. But here a reference cannot be necessary *before* judgment, because the relator is not in a position to recover his damages until *after* judgment. Nor can it be necessary for carrying the judgment into effect, because, as already shown, the judgment can only be a judgment of *ouster* and for costs.

VI. Hence, neither the finding of the court, nor the judgment to be entered upon it, should contain any provision or direction in relation to the fees of the office, but should only award as provided in section 441, that the defendant be ex-

cluded from the office, and that the plaintiff recover costs against the defendant.

EMOTT, J.—The scope and extent, as well as the form and manner of the proceedings in the action now substituted for an information in the nature of a *quo warranto*, are fixed and regulated by statute. Before the Revised Statutes of 1830, the judgment in *quo warranto* could only go to the right of the defendant. That was the only question determined, and the party really entitled was obliged to institute a new proceeding to get into possession of the office. (*See Revisor's Notes to Art.* 11, *Tit.* 11, *Ch.* 9. *Part III., Rev. Stats*). The new provisions introduced at the revision of the statutes in 1830 were intended to remedy this defect, and to enable the party claiming the office to come into the process and to have his right determined, as well as the wrongful intrusion of the party in possession. To make the remedy complete, a subsequent section was added to provide for the recovery of the fees which the defendant had received, and, to make this recovery more effectual, the relator was permitted by section 30, on making affidavit that fees had been received, to have the capias issued when the information was filed made veritable, and to arrest the defendant and hold him to bail to satisfy whatever amount of fees should finally be recovered. But these fees were not recovered in or by the judgment upon the information, but by a proceeding by a suggestion after judgment in the original proceeding of *quo warranto*. This suggestion was filed and served as a declaration in a personal action, and went on to issue, trial, and judgment for the amount of fees and emoluments shown to have been received by the defendant, in the same manner as ordinary suits at law. (2 *Rev. Stats.*, 582, 583 ; §§ 31, 34—38).

The Code, section 428, has repealed these provisions and abolished the proceedings by information. In substituting an action, the provisions of the former statute are however substantially re-enacted and applied to the civil action, which is now the only remedy. But there are two marked differences. By section 441, the terms and effect of the judgment to be rendered against a defendant convicted of intrusion, are regulated

and defined with a narrowness and strictness not to be found in the former system. The judgment is to be that "the defendant be excluded from such office, franchise or privilege, and also that the plaintiff recover costs against the defendant." And by section 439, an "action" for the damages sustained by the plaintiff by the unlawful intrusion, is substituted for the proceedings by suggestion, which are completely done away with.

As the judgment in the original proceeding by *quo warranto* itself was extended to ascertain and adjudge any amount of fees received by the defendant, or damages sustained by the relator, and as that judgment is now expressly confined by statute to the determination of the right, without reaching the question whether any fees have been received, much less assessing their amount and providing for their recovery—as finally the former supplemental proceeding by which all these questions were settled in the same suit or proceeding, is abolished, and a new remedy by an original action substituted,— I am unable to see how upon the present trial I can determine anything but the mere right between these parties. The question whether the relator has sustained any damages by the receipt of fees by the defendant during his occupation of the office which has been the subject of the present controversy, and what the amount of such damage is, must be left to a new and original litigation for decision.

It is urged that this view of the provisions of the Code renders the arrest of the defendant in the original action to try the title to the office an absurd as well as an offensive proceeding. It is not to be denied that it has very much that appearance. It is not easy to see what should be the conditions of the bail which is to be exacted from the defendant on such an arrest. Granting such an order of arrest, however, is not imperative upon the court or judge, and if the view which I have taken of the question be correct, it is not to be supposed that an arrest will very readily be sanctioned in any such case. These are considerations, however, more proper for the legislature than the courts. These difficulties have evidently been introduced by a hasty and, perhaps, inconsiderate attempt to simplify the former practice, in cases of

*quo warranto*, and to assimilate it to the new procedure. Portions of the former well-considered and well-adjusted statutes have been introduced into the new legislation, and other portions omitted, without regarding their accuracy, connection, and inter-dependence, and the result is that some of the portions retained are not only unnecessary but unjust, standing alone, and without the provisions left out, which made them wise and necessary in their original position and connection.